**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO.: 1:25-CR-10** |
| | : | |
| **Plaintiff,** | : | **JUDGE DOUGLAS R. COLE** |
| | : | |
| **v.** | : | |
| | : | **SENTENCING MEMORANDUM OF** |
| | : | **THE UNITED STATES** |
| **JOHNATHON BROWN,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

"Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium." *United States v. Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010).

On March 24, 2026, the defendant, Johnathon Brown, will stand before this Court after having pled guilty to one count of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a) and (e) and two counts of Attempted Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a) and (e). As calculated by the probation officer, Brown's Guideline range calls for 1,080 months (360 months per count). For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 30 years (360 months), which is the ceiling imposed by the parties' plea agreement. The government further requests that the Court run this sentence consecutive to the state sentence that Brown is currently serving as a result of Warren County case number 24CR041931, and to impose a 20-year term of supervised release, as set forth in the plea agreement.

**BACKGROUND**

On February 5, 2025, a Grand Jury returned a four count Indictment against Brown, charging him with one count of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a) and (e), two counts of Attempted Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a) and (e), and one count of Receiving Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). (Doc. 1). Following plea negotiations, Brown entered guilty pleas to Counts 1 through 3 of the Indictment. (Doc. 20). Finally, as part of the negotiated plea, the United States agreed to dismiss Count 4 of the Indictment, and Brown agreed to the forfeiture of items involved in the charged offenses. (*Id*. at 53-54).

Following Brown's plea hearing, the Court ordered the preparation of a Presentence Investigation Report (PSR) and scheduled the matter for sentencing on March 24, 2026. As the facts related to the charges are accurately summarized in the PSR, the United States respectfully incorporates by reference the offense conduct detailed in paragraphs 19 through 48 of the PSR.

**LEGAL STANDARD**

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Then, the Court is required to consider the sentencing factors outlined in 18 U.S.C. § 3553(a). These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) . . . the sentencing range established . . . [by the Guidelines];

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the day of sentencing[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court should impose a sentence sufficient but not greater than necessary to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

## ARGUMENT

### A. Sentencing Guidelines Calculation

The United States agrees with the Guidelines calculation set forth in the PSR, which provides for a Guidelines imprisonment sentence of 1,080 months (360 months per count), based on a total offense level 43 and criminal history category II. There were no objections to the PSR. Accordingly, the Guideline calculation provided in the PSR is the appropriate calculation.

### B. A Review of the 18 U.S.C. § 3553(a) Factors Supports a Sentence of 30 Years

Once the Court has calculated the advisory sentencing guideline range, the Court must next consider the sentencing factors set forth in § 3553(a) in imposing a sentence that is "sufficient, but

not greater than necessary, to comply with the purposes of sentencing." *United States v. Massey*, 663 F.3d 852, 860-61 (6th Cir. 2011). Due deference is accorded to the sentencing judge, who "is in the superior position to find facts and judge their import under section 3553(a) in the individual case." *Gall*, 552 U.S. 38 at 51 (citations omitted). Among the relevant purposes of sentencing is the need for the Court's sentence to reflect the seriousness of the defendant's criminal conduct, to promote respect for the law, to provide just punishment for the offense, and to deter future criminal conduct. A review of the § 3553(a) factors shows that the government's recommended sentence of 30 years of imprisonment followed by 20 years of supervised release is the appropriate sentence in this case.

1. <u>*Nature and Circumstances of the Offenses*</u>.

It is well-settled that the injuries caused through the production of child pornography are "very harmful to both the children and society as a whole." *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Congress and courts have repeatedly recognized that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id*. at 758; *see United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998) ("Unfortunately, the 'victimization' of the children involved does not end when the pornographer's camera is put away."). Child pornography is "a permanent record of the depicted child's abuse" and causes "devastating harm[.]" *Paroline v. United States*, 572 U.S. 434, 440 (2014) (internal quotation marks omitted). "[E]very viewing of child pornography is a repetition of the victim's abuse." *Id*. at 457.

The nature and circumstances of Brown's offense conduct demonstrate the necessity of a 30-year sentence. Brown did not suffer from a solitary lapse in judgment. His conduct was calculated and premeditated. From spying outside a bedroom window to arranging inconspicuously placed cameras inside a laundry basket, Brown fed his attraction to children by

4

secretly recording the young girls in his care after they exited from showers and went to dress in their rooms. He made pathetic and transparent excuses to lay eyes on the girls when they were naked by walking into the bathroom or bedroom when they were showering or changing, explaining that he had "all girls, so it doesn't really matter" or that he needed to see their bodies for "medical reasons."

When this was no longer enough, Brown escalated his conduct by grooming and manipulating a teenager for his own perverted desires. Starting when Minor Victim A was 15 years old, Brown used his authority as adult to solicit explicit pictures and sexual behaviors from her. For example, when Minor Victim A asked for a car ride or an e-cigarette, Brown insisted that she would have to send a picture of herself to him or agree to kiss him in exchange. Through Brown's steady efforts, Minor Victim A developed an emotional connection to him—one that Brown further exploited with jealousy and control. He used emotional ploys of suicide and self-harm to make Minor Victim A (and Minor Victim B) worry about his well-being and to develop unhealthy attachments to him. Once he solidified his sexual relationship with Minor Victim A, he added to his collection of secret videos by soliciting sexually explicit videos from the minor as well as filming himself having sex with her.

Finally, when he was caught with Minor Victim A and Minor Victim B at a motel, Brown led law enforcement on a prolonged, multi-jurisdiction, high-speed chase that put countless lives at risk and required the deployment of stop sticks, the Ohio State Patrol Aviation team, and SWAT. In what appeared to be attempt to take his own life to avoid apprehension, Brown drove his truck into a moving train and, even then, did not surrender to authorities but engaged in an hours' long standoff with law enforcement until he was forced to exit his vehicle due to the deployment of tear gas and a K9 officer.

Although this Court must consider other factors beyond the nature and circumstances of Brown's offenses, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019), quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) ("The district court's decision to assign more or less weight to a given factor is 'a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much.'"). Here, Brown's actions victimized four children. He created or attempted to create child pornography of children who were entrusted to his care either temporarily or permanently. In each case, he abused that trust and exploited four young girls for his own benefit. As such, a sentence of 30 years is a just sentence that reflects the nature and circumstances of the offenses.

2. *History and Characteristics of Brown.*

As this Court is aware, child pornography offenders often lurk in the shadows and do not present with a criminal history until they are caught for the secret and hidden conduct that largely takes place within the confines of their own home. In this respect, Brown is different. Brown is a lifetime criminal with a history of violence and disrespect for the law.

As set forth in the PSR, for the past 20 years, Brown has racked up a myriad of charges, including numerous convictions for domestic violence and theft along with aggravated burglary, disorderly conduct, breaking and entering, criminal damaging, criminal mischief, felonious assault, and failure to comply with order or signal of a police officer. In reviewing this conduct, it appears that the targets of Brown's criminal conduct are most often those in his life who are closest to him. From assaulting his sister and his ex-girlfriend to stealing from his mother and great aunt, is clear that, even before the instant offenses, Brown has had a long history of hurting and abusing his loved ones. As such, the United States believes that Brown's history and characteristics serve as further aggravators and, thus, also support a sentence of 30 years of imprisonment.

In terms of mitigation, the government anticipates that Brown may ask this Court to vary downward because of his mental health issues. As outlined above, Brown's Guideline calculation calls for a 90-year sentence of imprisonment. The United States is asking for a mere third of that amount. As a result, the Court should decline any downward variance that results in a sentence any lower than a term of 30 years as it is unwarranted by the circumstances. Rather than justifying a further downward variance based on mental health issues, this Court should impose a sentence that considers these issues where they will have the greatest benefit: in considering the appropriate mental health treatment that Brown should receive while incarcerated and the conditions to be imposed on supervised release. *See United States v. McCarty*, 628 F.3d 284, 294-95 (6th Cir. 2010) (affirming a district court's sentence where the court did not vary downward but nonetheless considered the defendant's mental health in the imposed sentenced by requesting that the Bureau of Prisons consider the defendant's mental health issues in choosing a location where he could receive treatment).

Similarly, the Court should decline any further downward variance based on Brown's report that he was sexually abused himself as a 17-year-old. "The victim-offender cycle in male sexual abuse has been popularized as an explanation as to why some males sexually offend. However, there are serious limitations to this explanation…" Lambie, Ian *et al*. "Resiliency in the victim-offender cycle in mail sexual abuse" in Sex Abuse: A Journal of Research and Treatment 14(1) (2002) at 43. *See also*, Glasser, M. *et al*., "Cycle of child sex abuse: links between a victim and becoming a perpetrator" in *The British Journal of Psychiatry* 179 (2001) at 488 (noting that "the data do not provide strong support for a cycle of sexual substantial proportion of male perpetrators"); and Widom, C. and C. Massey, "A Prospective Examination of Whether Childhood Sexual Abuse Predicts Subsequent Sexual Offending" in *JAMA Pediatrics* (2015) at 6 (concluding

that "These results do not provide support for the common belief that being a survivor of childhood sexual abuse carries with it a unique increase in the risk for becoming a sex offender...")

Further, proponents of the "victim-to-victimizer" cycle is based on belief that there is a "tendency to abuse the victim in a way that replicates the offender's own experience of abuse." Glasser, M., *supra*, at 482 (summarizing other studies focused on the progression from victim to victimizers). Here, Brown's purported abuse as a 17-year-old by the owner of local bar bears little resemblance to his offense conduct that included grooming and manipulation of a teenage girl and the sexual exploitation of prepubescent girls.

In short, neither Brown's history of mental health struggles nor his purported sexual abuse should serve as a mitigating circumstance that result in a term of imprisonment less than 30 years. Instead, at most, these claims should only be considered in the appropriate context: to determine what treatment he may need while incarcerated and what appropriate conditions of his supervised release should be included to reduce the likelihood of him reoffending in the future. Further, in considering Brown's history and characteristics, the Court's sentence should reflect what is most pertinent to the offenses at issue: Brown's longstanding history of abusing and exploiting those who have put their love and trust in him.

   3. *Seriousness of the Offenses, Promoting Respect for the Law, and the Need for Just Punishment.*

The seriousness of these offenses cannot be understated. Brown's criminal activity exacerbated the sexual victimization of the most vulnerable members of our society, and, as Congress has recognized, had "a deleterious effect on all children by encouraging a societal perception of children as sexual objects and leading to further sexual abuse and exploitation of them." Child Pornography Prevention Act of 1996, P.L. 104-208, Section 121, Subsection 1. Given the 15-year mandatory minimum applicable to all three counts that Brown pled to, Congress

clearly views the production and attempted production of child pornography to be serious crimes. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (quoting Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)).

Brown's particular actions in this case support Congress' perception and clearly illustrate the danger and degradation to the most vulnerable members of our society that offenses of this nature pose. While the individualized impact that each of Brown's victims have faced (and will continue to face) will vary, it is likely that each of these victims will suffer the consequences of Brown's criminal conduct for the rest of their lives. As such, the United States requests a sentence of 30 years imprisonment to reflect the seriousness of this conduct, to promote respect for the law, and to obtain just punishment.

4. *Adequate Deterrence, the Need to Protect the Public, and Correctional Treatment.*

The Supreme Court has noted the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). As a repeat and dangerous sex offender, Brown fits well within that class and presents a clear danger to the community. Brown is a sexual predator who gained access to children through trusted relationships. He produced surreptitious recordings of the children under his care and in his house. He befriended the friend of his teenage daughter, gained her trust and affection, and manipulated her into being in a toxic and exploitive sexual relationship with him. He then solicited sexually explicit videos from her and created his own videos of their sexual conduct.

Here, Brown acted beyond an addiction to child pornography by actively producing his own exploitive material for his own pedophilic pleasure. Further, as evidenced by the high-speed chase that Brown led officers on after being found with Minor Victim A and Minor Victim B,

Brown will go to great lengths to try to hide and cover up his conduct. Perhaps of even greater concern, Brown will seemingly do so at whatever cost, including that which puts law enforcement, bystanders, and the general community at risk for their safety.

In short, Johnathon Brown is a repeat and dangerous sex offender. From his history, it is unclear what, if anything, will prevent him from reoffending. As such, a significant sentence of incarceration is necessary to deter him from committing additional sex offenses and to protect the public. Additionally, a 20-year period of supervised release to follow Brown's imprisonment is also necessary to protect society from Brown and ensure continued accountability.

Further, in addition to specific deterrence, a sentence of 30 years imprisonment is necessary to achieve general deterrence. The Sixth Circuit has "told sentencing courts *repeatedly*, 'general deterrence is crucial in the child pornography context' to protect the public by deterring the market for such products and activities." *United States v. Schrank*, No. 17-6093, 2019 WL 1716009, at \*2 (6th Cir. Apr. 16, 2019) (emphasis in original), citing *United States v. Robinson*, 778 F.3d 515, 520-21 (6th Cir. 2015) (editorial mark omitted); *see also United States v. Bistline*, 720 F.3d 631, 632 (6th Cir. 2013); *United States v. Christman*, 607 F.3d 1110, 1121 (6th Cir. 2010); *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010). Accordingly, a significant sentence in this case is necessary not just to deter Brown, but to deter others like Brown from engaging in this type of horrific conduct.

Finally, given the instant offenses, the United States believes that sex offender treatment is also an important aspect of deterring future criminal activity by Brown. As such, the government suggests that the Court recommend to the Bureau of Prisons that Brown be designated to an institution providing mental health and sex offender treatment options.

5. *Unwarranted sentencing disparities.*

A sentence of 30 years imprisonment also takes into account the need to avoid unwarranted sentencing disparities. According to United States Sentencing Commission's Judiciary Sentencing INformation ("JSIN")[1] data for fiscal years 2020 to 2024, defendants who were also sentenced under the § 2G2.1 Guideline with an offense level of 43 and criminal history category II had a median sentence of 360 months and average sentence of 355 months of imprisonment. Notably, this data reflects only a single count of conviction, whereas Brown has been convicted of three counts under this Guideline.

Further, individuals that produce or otherwise engage in activities related to child pornography are consistently sentenced to 30 years and more in the Southern District of Ohio. *See, e.g.*, *United States v. Jeffrey Tyler Watson*, 1:22-cr-73 (imposing sentence of 420 months imprisonment and a life term of supervised release for sexual exploitation of minors); *United States v. Jeffery Stopar*, 2:24-cr-177 (imposing a sentence of 720 months imprisonment and life term of supervised release for sexual exploitation of minor); *United States v. Jeremiah Morrison*, 2:24-cr-28 (imposing sentence of 420 months imprisonment and life term of supervised release for distribution and possession of child pornography and transportation of obscene matters); *United States v. Ty Brandon Roberts*, 3:22-cr-77 (imposing sentence of 600 months imprisonment and five years supervised release on sexual exploitation of children and coercion and enticement); *United States v. Marcus Leon Davis*, 3:23-cr-107 (imposing sentence of 1,200 months' imprisonment and life term of supervised release on production and distribution of child pornography).

---

[1] Available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last accessed March 16, 2026) (data does not include defendants who received a departure for substantial assistance under U.S.S.G. § 5K1.1).

Accordingly, a sentence of 30 years (or 360 months) imprisonment will also fulfill the sentencing need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct to Brown.

6. *Impact of Undischarged Warren County Sentence*

Lastly, it is anticipated that Brown will request that the sentence imposed by the Court run concurrent or partially concurrent with the sentence he received (and is currently serving) in Warren County Court of Common Pleas case number 24CR041931. The United States strongly opposes such a request for several reasons.

First, the sentence imposed by the Warren County Court addressed a completely separate harm than what is being addressed in the instant matter. In leading police on a dangerous and prolonged high-speed chase, Brown flouted his disrespect for law enforcement and put countless lives in danger. In contrast, the instant proceedings pertain to the sexual exploitation and victimization of four minor victims. As such, if this Court were to impose a sentence that runs concurrent to the Warren County sentence for any amount of time, it would be minimizing the harms that Brown caused in both of these cases. Such an outcome would be unwarranted by the facts, unfair to the victims, and unjust under the law.

Second, because the circumstances underlying the Warren County convictions are considered relevant conduct in this case, Brown has already received a benefit in his Guideline calculation in that he receives no criminal history points for these convictions. (See PSR ¶ 117). Had Brown's actions in the Warren County case not been considered relevant conduct, he would have obtained an additional three criminal history points, putting him in criminal history category III instead of category II. (*See* U.S.S.G. § 4A1.1(a)).[2]

---

[2]Here, it is also acknowledged that Brown received an additional 2 points in his offense level for obstruction of justice under U.S.S.G. § 3C1.2 as it relates to Count 1. (*See* PSR ¶¶ 65-66). However, it is important to note that, because of how units were applied, these 2 points had no real impact on the final adjusted offense level. That is,

Finally, as noted above, Brown has already received a significant amount of leniency from the United States by virtue of the plea agreement capping his possible sentence at mere third of his Guideline range. He is underserving of any further leniency from the Court. Here, the government stands by the plea agreement because it avoids a trial and the retraumatization of four minor victims. Nonetheless, the United States maintains that 30 years of imprisonment is the minimally sufficient sentence necessary to comply with the goals of sentencing.

## CONCLUSION

For the foregoing reasons, the United States asks the Court to sentence Johnathon Brown to a term of imprisonment of 30 years to run consecutive to the sentence imposed in Warren County case number 24CR041931, followed by a 20-year term of supervised release, and a mandatory $300 special assessment.[3]

Respectfully Submitted,

DOMINICK S. GERACE II
UNITED STATES ATTORNEY


*Danielle E. Margeaux*
DANIELLE E. MARGEAUX
KYLE J. HEALEY
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202

---

instead of 36 points, the adjusted offense level for Count 1 would have been 34 points, which is still within 1 to 4 levels less serious than the highest offense level of 38, meaning it still would have been assigned 1 unit. (*See* PSR ¶¶ 65-67, 89-90; *see also* U.S.S.G. § 3D1.4(a)).

[3] The United States recognizes that it could also seek an additional $5,000 special assessment under 18 U.S.C. § 3014 as well as an assessment of up to $50,000 for each count of conviction under 18 U.S.C. § 2259A(a)(3). However, given the substantial sentence requested and Brown's current financial status, the government is not requesting that these additional assessments be imposed.